Adrian R. Bacon (SBN 280332)
**THE LAW OFFICES OF**
**TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Telephone: (818) 646-5690
Facsimile: (866) 633-0228
Email: abacon@toddflaw.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZED REYES, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KEENAN AND ASSOCIATES.<br><br>　　　　　Defendant. | **CASE NO.:**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

　　　　Plaintiff Zed Reyes, (herein "Plaintiff"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, brings this Class Action Complaint against Keenan and Associates ("Keenan" or "Defendant"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to each Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

　　　　1.　　Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Keenan with sensitive personally identifiable information ("PII")[1] that was subsequently exposed in a data breach,

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

1

which Keenan publicly disclosed on January 26, 2024 (the "Data Breach" or the "Breach").[2]

2.    Plaintiff's claims arise from Defendant's failure to properly secure and safeguard PII that was entrusted to them, and their accompanying responsibility to store and transfer that information. At least 1,500,000 million consumers information were affected by the Data Breach, in which sensitive personal information was accessed by an unauthorized third party.[3]

3.    Keenan is an insurance brokerage and consulting firm that helps address the insurance needs of hospitals, public entities and California school districts.[4]

4.    Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on their affirmative representations to Plaintiff and the Class, to keep their PII confidential, safe, secure, and protected from unauthorized disclosure or access.

5.    On or around August 27, 2023, Defendant became aware of a cybersecurity   incident affecting their company's systems.[5] Keenan first publicly disclosed the Data Breach to the Office of the Maine Attorney General on January 26, 2024.[6] The company stated that they notified law enforcement and launched an investigation and engaged leading cybersecurity and forensic experts to assist.[7]

---

[2] *Data Breach Notification*, MAINE OFFICE OF THE ATTORNEY GENERAL (Jan. 26, 2024) https://apps.web.maine.gov/online/aeviewer/ME/40/21846091-dc71-4ecc-9db8-a3be3e84a7d0.shtml (last visited February 8, 2024).
[3] *Id.*
[4] *Keenan Blog*, KEENAN & ASSOCIATES https://www.keenan.com (last visited February 8, 2024).
[5] *Sample Data Breach Notice Letter*, MAINE OFFICE OF THE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/21846091-dc71-4ecc-9db8-a3be3e84a7d0/fc5bce3e-ce43-468c-a992-4e37e17cb6c7/document.html (last visited February 8, 2024).
[6] *Data Breach Notification*, Maine Office of the Attorney General (Jan. 26, 2024) https://apps.web.maine.gov/online/aeviewer/ME/40/21846091-dc71-4ecc-9db8-a3be3e84a7d0.shtml (last visited February 8, 2024).
[7] *Id.*

6.    Defendant's investigation concluded that an unauthorized party gained access to certain Keenan internal systems and as a result, the following customer information was exposed: (1) name, (2) date of birth, (3) Social Security number, (3) passport number, (4) driver's license number, (5) health insurance information, and (6) general health information.[8]

7.    Plaintiff's claim arises from Defendant's failure to safeguard PII provided by and belonging to their customers and failure to provide timely notice of the Data Breach.

8.    Defendant failed to take precautions designed to keep their customers' PII secure.

9.    Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the PII they collected safe and secure from unauthorized access.  Defendant solicited, collected, used, and derived a benefit from the PII, yet breached their duty by failing to implement or maintain adequate security practices.

10.    Defendant admits that information in their system was accessed by unauthorized individuals, though they have provided little information regarding how the data breach occurred.

11.    The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm.  Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

12.    Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted

---

[8] *Id.*

information it maintained for Plaintiff and members of the Class, causing the exposure of PII for Plaintiff and members of the Class.

13.    As a result of the Defendant's inadequate digital security and notice process, Plaintiff and Class Members' PII was exposed to criminals. Plaintiff and the Class have suffered and will continue to suffer injuries including: financial losses caused by misuse of PII; the loss or diminished value of their PII as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

14.    Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendant's failure to: (i) adequately protect the PII of Plaintiff and members of the Class; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected PII using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

15.    Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence per se; unjust enrichment, and breach of implied covenant of good faith fair dealing, violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*, and violation of the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.*

16.    Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one member of the Class defined below is a citizen of a different state than Defendant, and there are more than 100 putative Class Members.

18.     This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains their principal place of business in Torrance, California.

19.     Venue is proper in these District under 28 U.S.C. § 1391(b)(2) because Defendant is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

20.     Plaintiff Zed Reyes is a citizen of California and resides in Brea, CA. Plaintiff is a customer of Defendant and received a Notice from Defendant on January 26, 2024 informing him that his PII was compromised in the Breach. As a consequence of the Data Breach, Plaintiff has been forced to, and will continue to, invest significant time monitoring his accounts to detect and reduce the consequences of likely identity fraud.  As a result of the Data Breach, Plaintiff is now subject to substantial and imminent risk of future harm. Plaintiff Reyes would not have used Defendant's services had he known that it would expose his sensitive PII.

21.     Defendant is a privately held insurance consulting and brokerage firm, with its principal place of business located in Torrance, California. Defendant is the largest independent insurance broker in California and 12th largest in the United

States.[9] Defendant provides insurance and budgetary solutions to schools, public agencies and health care organizations.[10]

22.    Defendant collected and continues to collect the PII of their customers and clients throughout their usual course of business operations. By obtaining, collecting, using, and deriving benefit from Plaintiff and Class's PII, Defendant assumed legal and equitable duties to those persons, and knew or should have known that it was responsible for protecting Plaintiff and Class Members' PII from unauthorized disclosure and/or criminal cyber activity.

## FACTUAL BACKGROUND

### A.    Background on Defendant

23.    Defendant Keenan is the largest independent insurance broker in California and 12th largest in the United States,[11] providing insurance and budgetary solutions to schools, public agencies, and health care organizations.[12]

24.    In the ordinary course of their business practices, Defendant stores, maintains, and uses an individuals' PII, which includes Plaintiff and Class Members', including but not limited to information such as: full names; addresses; Social Security numbers; passport numbers; driver's license numbers; health insurance information, and general health information.

25.    Upon information and belief, Defendant made promises and representations to their customers, including Plaintiff and Class Members, that the PII collected from them as a condition of obtaining a loan would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

---

[9] *History*, KEENAN & ASSOCIATES https://www.keenan.com/About/History (last visited February 8, 2024).
[10] *Id.*
[11] *Id.*
[12] *Id.*

26.     Plaintiff and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with their obligations to keep such information confidential and secure from unauthorized access.

27.     As a result of collecting and storing the PII of Plaintiff and Class Members for their own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' PII from disclosure to third parties.

**B.     The Data Breach**

28.     On or around August 27, 2023, Defendant became aware of a cybersecurity incident affecting their company's systems.[13] In response, Defendant notified law enforcement and launched an investigation and engaged leading cybersecurity and forensic experts to assist.[14]

29.     Defendant's investigation concluded that an unauthorized party gained access to certain Keenan internal systems and as a result, the following customer information was exposed: (1) name, (2) date of birth, (3) Social Security number, (3) passport number, (4) driver's license number, (5) health insurance information, and (6) general health information.[15]

---

[13] *Sample Data Breach Notice Letter*, MAINE OFFICE OF THE ATTORNEY GENERAL https://apps.web.maine.gov/online/aeviewer/ME/40/21846091-dc71-4ecc-9db8-a3be3e84a7d0/fc5bce3e-ce43-468c-a992-4e37e17cb6c7/document.html (last visited February 8, 2024).
[14] *Id.*
[15] *Id.*

30.     Keenan first publicly disclosed the Data Breach to the Office of the Maine Attorney General on January 26, 2024.[16]

31.     While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive personal information of Plaintiff and Class Members.

32.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C.     Defendant's Failure to Prevent, Identify and Timely Report the Data Breach.**

33.     Defendant admits that unauthorized third persons accessed their network systems in order to obtain sensitive information about their current and former customers.

34.     Defendant failed to take adequate measures to protect their computer systems against unauthorized access.

35.     Defendant was not only aware of the importance of protecting the PII that it maintains, as alleged, it promoted their capability to do so, as evident from their Privacy Policy, which includes the following representations,

> "We have implemented measures reasonably designed to protect and secure your Personal Information from accidental loss, misuse, and from unauthorized access, use, alteration, and disclosure." [17]

36.     The PII that Defendant allowed to be exposed in the Data Breach is the type of private information that Defendant knew or should have known would be the target of cyberattacks, and the type of private information Defendant knew are

---

[16] *Data Breach Notification*, Maine Office of the Attorney General (Jan. 26, 2024) https://apps.web.maine.gov/online/aeviewer/ME/40/21846091-dc71-4ecc-9db8-a3be3e84a7d0.shtml (last visited February 8, 2024).

[17] *Privacy Statement*, KEENAN & ASSOCIATES https://www.keenan.com/Privacy-Statement (last visited February 8, 2024).

protected under statutory law:

### Personal Information We Collect

"**Personal Information**" is information that identifies you as an individual or relates to you, an identifiable individual.

The Personal Information we may collect about you from our clients (or receive directly from you) will depend on the type of service we have been engaged to provide. The following provides a general overview of the categories of Personal Information we may collect. Such Personal Information include, but are is not limited to:

- Name, contact information, and other identifiers (real name, alias, address, unique personal identifier, online identifier, Internet Protocol (IP) address, email address, account name, Social Security number, driver's license number, or other similar identifiers);
- Personal identification documentation (Social Security Number, driver's license number, passport number, employee identification numbers, insurance policy number, bank account number, etc.);
- Assets and income, occupation and employment status, dependent information and other relevant financial information;
- Information related to the provision of services to you, such as policy information, claims information, and information relating to any of your past claims and related losses;
- Information relating to your account activity and premium payment history;
- Information from reporting agencies and state and federal government agencies, such as state motor vehicle departments;
- Information from other sources, such as medical or health care providers and other third parties with which you or we maintain a relationship;
- Statements made by or about you;
- Records of communications; and
- Usage data (internet or other electronic network activity information including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with our websites, or with the

Internet, application, or advertisement, including information obtained through the use of internet "cookies".

Some of the categories of Personal Information that we may collect are special categories of information protected by federal law including your health records (such as your medical history and reports on medical diagnoses, injuries, and treatment) and information about your personal characteristics and circumstances of a sensitive nature such as race, color, sex, age, religion, national origin, disability, citizenship status, and genetic information.[18]

37.     Despite their own knowledge of the inherent risks of cyberattacks, and notwithstanding the FTC's data security principles and practices,[19] Defendant failed to disclose that their systems and security practices were inadequate to reasonably safeguard their customer's sensitive personal information.

38.     The FTC directs businesses to use an intrusion detection system to expose a breach as soon as it occurs, monitor activity for attempted hacks, and have an immediate response plan if a breach occurs.[20]  Immediate notification of a Data Breach is critical so that those impacted can take measures to protects themselves.

39.     Despite this guidance, Defendant delayed the notification of the Data Breach. Based on Defendant's filing with the Maine Office of the Attorney General, the Data Breach was discovered on August 27, 2023, yet Defendant, by their admission, did not publicly disclose the Data Breach until January 26, 2024.[21]

**D.     The Harm Caused by the Data Breach Now and Going Forward.**

40.     Victims of data breaches are susceptible to becoming victims of

---

[18] *Id.*

[19] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited February 8, 2024).

[20] *Id.*

[21] *Data Breach Notification*, Maine Office of the Attorney General (Jan. 26, 2024) https://apps.web.maine.gov/online/aeviewer/ME/40/21846091-dc71-4ecc-9db8-a3be3e84a7d0.shtml (last visited February 8, 2024).

identity theft.

41.    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority," 17 C.F.R. § 248.201(9), and when "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[22]

42.    The type of data that was accessed and compromised here – such as, full name and Social Security number – can be used to perpetrate fraud and identity theft.   Social Security numbers are widely regarded as the most sensitive information hackers can access.  Social Security numbers and dates of birth together constitute high risk data.

43.    Plaintiff and Class members face a substantial risk of identity theft given that their Social Security numbers, addresses, dates of birth, and other important PII were compromised in the Data Breach.  Once a Social Security number is stolen, it can be used to identify victims and target them in fraudulent schemes and identity theft.

44.    Stolen PII is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

45.    When malicious actors infiltrate companies and copy and exfiltrate the PII that those companies store, that stolen information often ends up on the dark web because the malicious actors buy and sell that information for profit.[23]

46.    For example, when the U.S. Department of Justice announced their

---

[22] *Prevention and Preparedness*, NEW YORK STATE POLICE, https://troopers.ny.gov/prevention-and-preparedness (last visited February 8, 2024).
[23] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE, Dec. 28, 2020, *available at:* https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring (last visited February 8, 2024).

seizure of AlphaBay in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. Other marketplaces, similar to the now-defunct AlphaBay, "are awash with [PII] belonging to victims from countries all over the world. One of the key challenges of protecting PII online is their pervasiveness. As data breaches in the news continue to reveal, PII about employees, customers and the public are housed in all kinds of organizations, and the increasing digital transformation of today's businesses only broadens the number of potential sources for hackers to target."[24]

47.    PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[25] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[26]

48.    A compromised or stolen Social Security number cannot be addressed as simply as a stolen credit card. An individual cannot obtain a new Social Security number without significant work. Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; rather, an individual must show evidence of actual, ongoing fraud activity to obtain a new number. Even then, however, obtaining a new Social Security number may not suffice. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old

---

[24] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR, April 3, 2018, *available at:* https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited February 8, 2024).
[25] *Id.*
[26] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited February 8, 2024).

number, so all of that old bad information is quickly inherited into the new Social Security number."[27]

49.    The PII compromised in the Data Breach demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained: "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10 times on the black market."[28]

50.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[29]

51.    Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[30] Defendant did not rapidly report to Plaintiff and Class Members that their PII had been stolen.

52.    As a result of the Data Breach, the PII of Plaintiff and Class Members have been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered thereby as a direct result of Defendant's Data Breach, include: (a) theft of their PII; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and

---

[27]Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthems-hackers-has-millions-worrying-about-identity-theft (last visited February 8, 2024).

[28] *Experts advise compliance not same as security*, RELIAS MEDIA https://www.reliasmedia.com/articles/134827-experts-advise-compliance-not-same-as-security (Last visited February 8, 2024).

[29]*2019 Internet Crime Report Released*, FBI, https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion. (Last visited February 8, 2024).

[30] *Id.*

deal with the consequences of this breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their PII against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' PII.

53.    In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their PII is secure, remains secure, and is not subject to further misappropriation and theft.

54.    Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff and Class Members' PII; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

55.    The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their

peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the Data Breach publicly announced by Defendant in January 2024 (the "Class").

57.     Plaintiff also seeks certification of a California Subclass, defined as follows:

> All California residents whose personal information was compromised in the Data Breach publicly announced by Defendant in January of 2024 (the "California Subclass").

58.     Specifically excluded from the Class are Defendant, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

59.     Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

60.     This action may be certified as a class action under Federal Rule of Civil Procedure 23 because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

61.    Numerosity (Rule 23(a)(1)): The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, Plaintiff estimates that the Class is comprised of millions of Class Members. The Class is sufficiently numerous to warrant certification.

62.    Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of those of other Class Members because they all had their PII compromised as a result of the Data Breach.  Plaintiff is a member of the Class, and their claims are typical of the claims of the members of the Class.  The harm suffered by Plaintiff is similar to that suffered by all other Class Members that was caused by the same misconduct by Defendant.

63.    Adequacy of Representation (Rule 23(a)(4)): Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

64.    Superiority (Rule 23(b)(3)): A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members is relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for their wrongdoing as asserted herein.

65.    Predominant Common Questions (Rule 23(a)(2)): The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to

the nature and scope of the information compromised in the Data Breach;

b.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c.  Whether Defendant's storage of Class Member's PII was done in a negligent manner;

d.  Whether Defendant had a duty to protect and safeguard Plaintiff and Class Members' PII;

e.  Whether Defendant's conduct was negligent;

f.  Whether Defendant's conduct violated Plaintiff and Class Members' privacy;

g.  Whether Defendant's conduct violated the statutes as set forth herein;

h.  Whether Defendant took sufficient steps to secure their customers' PII;

i.  Whether Defendant was unjustly enriched;

j.  The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

66.    Information concerning Defendant's policies is available from Defendant's records.

67.    Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude their maintenance as a class action.

68.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

69.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

70.    Given that Defendant had not indicated any changes to their conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and All Class Members)

71.    Plaintiff incorporates by reference and re-allege each and every allegation set forth above in paragraphs 1 through 19 and paragraphs 24 through 55 as though fully set forth herein.

72.    Plaintiff brings this claim individually and on behalf of the Class Members.

73.    Defendant knowingly collected, came into possession of, and maintained Plaintiff and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

74.    Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff and Class Members' PII.

75.    Defendant had, and continues to have, a duty to timely disclose that Plaintiff and Class Members' PII within their possession was compromised and precisely the type(s) of information that were compromised.

76.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected their customers' PII.

77.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and their

customers. Defendant was in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

78.   Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

79.   Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' PII.

80.   The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

> a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;
>
> b. Failing to adequately monitor the security of their networks and systems; and
>
> c. Failing to periodically ensure that their computer systems and networks had plans in place to maintain reasonable data security safeguards.

81.   Defendant, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and Class Members' PII within Defendant's possession.

82.   Defendant, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff and Class Members' PII.

83.   Defendant, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

84.   Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the NIST's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Member's PII. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the personal customer information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of their networks' vulnerabilities; and failed to implement policies to correct security issues.

85.   Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

86.   It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff and Class Members' PII would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

87.   It was foreseeable that the failure to adequately safeguard Plaintiff and Class Members' PII would result in injuries to Plaintiff and Class Members.

88.   Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members' PII to be compromised.

89.   But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

90.   As a result of Defendant's failure to timely notify Plaintiff and Class Members that their PII had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

91.   As a result of Defendant's negligence and breach of duties, Plaintiff

and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or products that were received without adequate data security.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and All Class Members)**

92.    Plaintiff incorporates by reference and re-allege each and every allegation set forth above in paragraphs 1 through 19 and paragraphs 24 through 55 as though fully set forth herein.

93.    Plaintiff and the Class provided and entrusted their PII to Defendant. Plaintiff and the Class provided their PII to Defendant as part of Defendant's regular business practices.

94.    In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the PII of Plaintiff and Class Members in their possession was secure.

95.    Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their PII in order for Defendant to provide services, for which Defendant is compensated.  In exchange, Defendant agreed to, among other

things, and Plaintiff understood that Defendant would: (1) provide services to Plaintiff and Class Members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff and Class Members' PII; and (3) protect Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards.

96.    Implied in these exchanges was a promise by Defendant to ensure the PII of Plaintiff and Class Members in their possession was only used to provide the agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff and Class Members' PII.

97.    A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff and Class Members' PII to be accessed in the Data Breach.

98.    Indeed, implicit in the agreement between Defendant and their customers was the obligation that both parties would maintain information confidentially and securely.

99.    These exchanges constituted an agreement and meeting of the minds between the parties: Plaintiff and Class Members would provide their PII in exchange for services by Defendant. These agreements were made by Plaintiff and Class Members as Defendant customers.

100.    When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their PII to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiff and Class Members' PII if it did not intend to provide Plaintiff and Class Members with their services.

101.    Defendant was therefore required to reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure and/or use.

102.    Plaintiff and Class Members accepted Defendant's offer of services

and fully performed their obligations under the implied contract with Defendant by providing their PII, directly or indirectly, to Defendant, among other obligations.

103.   Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their PII.

104.   Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' PII.

105.   Defendant's failure to implement adequate measures to protect the PII of Plaintiff and Class Members violated the purpose of the agreement between the parties.

106.   Instead of spending adequate financial resources to safeguard Plaintiff and Class Members' PII, which Plaintiff and Class Members were required to provide to Defendant, Defendant's instead used that money for other purposes, thereby breaching their implied contracts it had with Plaintiff and Class Members.

107.   As a proximate and direct result of Defendant's breaches of their implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and All Class Members)**

108.   Plaintiff incorporates by reference and re-allege each and every allegation set forth above in paragraphs 1 through 19 and paragraphs 24 through 55 as though fully set forth herein.

109.   Plaintiff and Class Members conferred a benefit upon Defendant by using Defendant's services.

110.   Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff. Defendant also benefited from the receipt of Plaintiff's PII, as this was used for Defendant to administer their services to Plaintiff and the Class.

111.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII to Defendant or utilized their services had they known Defendant would not adequately protect their PII.

112.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff all unlawful or inequitable proceeds received by it because of their misconduct and Data Breach.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiff and All Class Members)**

113.    Plaintiff incorporates by reference and re-allege each and every allegation set forth above in paragraphs 1 through 19 and paragraphs 24 through 55 as though fully set forth herein.

114.    Defendant has violated the covenant of good faith and fair dealing by their conduct alleged herein.

115.    Every contract in this state has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

116.    Plaintiff and Class Members have complied with and performed all, or substantially all, of the obligations imposed on their conditions of their loans with Defendant.

117.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard their customers PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of PII and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

118.   Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them substantial injury in an amount to be determined at trial.

### COUNT V
### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")
### Cal. Bus. & Prof. Code § 17200, et seq.
### (On Behalf of Plaintiff and California Subclass Members)

119.   Plaintiff incorporates by reference and re-allege each and every allegation set forth above in paragraphs 1 through 19 and paragraphs 24 through 55 as though fully set forth herein.

120.   Plaintiff and the California Subclass bring this claim on behalf of the California Subclass against Defendant.

121.   Defendant has engaged in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, et seq.

122.   Defendant stored the PII of Plaintiff and Subclass Members in its computer systems.

123.   Defendant knew or should have known that it did not maintain reasonable and appropriate security measures that complied with federal regulations to safeguard consumers' PII.  As evident from the Data Breach, Defendant failed to properly vet the data security of its third-party agents and vendors to whom it provided sensitive customer PII.

124.   Moreover, Defendant failed to disclose that Plaintiff and Subclass Members' PII were susceptible to hackers as a result of Defendant's inadequate data security measures, and that Defendant was the only one in possession of that material information. Defendant had a duty to disclose information regarding the susceptibility of Plaintiff and Subclass Members' PII.

125.   Defendant's actions and inactions violated the "unlawful" prong of the UCL. Defendant violated Section 5(a) of the FTC Act (which is a predicate legal violation for this UCL claim) by misrepresenting, by omission, the safety and security of their computer systems, and its ability to safely store Plaintiff's and Subclass Members' PII.

126.   Defendant further violated Section 5(a) of the FTC Act by failing to implement reasonable and appropriate security measures or follow industry standards in its data security practices, by failing to ensure its affiliates with which it directly or indirectly shared the PII did the same, and by failing to timely notify Plaintiff and Class Members of the Data Breach.

127.   Had Defendant complied with these legal requirements, Plaintiff and Class Members would not have suffered the damages related to the Data Breach, and consequently from Defendant's failure to timely notify Plaintiff and Class Members of the Data Breach.

128.   Defendant's actions and inactions further violated the "unfair" prong of the UCL.

129.   Under the "balancing test," Defendant engaged in unfair business practices.  The harm caused by Defendant's actions and omissions, as described in detail above, greatly outweigh any perceived utility. Defendant's failure to follow basic data security protocols and failure to disclose inadequacies of Defendant's data security cannot be said to have had any utility at all. All of Defendant's actions and omissions in this respect were clearly injurious to Plaintiff and Subclass Members, directly causing the harms alleged below.

130.   Similarly, Defendant engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described herein, violated fundamental public policies expressed by the California Legislature. See, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers

. . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the California law.

131.    Defendant engaged in unfair business practices under the "FTC test." The harm caused by Defendant's actions and omissions, as described in detail above, is substantial in that it affects thousands of Subclass Members and has caused those persons to suffer actual harms. Such harms include a substantial risk of identity theft, disclosure of Plaintiff's and Subclass Members' PII to third parties without their consent, diminution in value of their PII.

132.    These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Subclass Members. They were likely to deceive the public into believing their PII was securely stored when it was not. The harm these practices caused to Plaintiff and Subclass Members outweighed their utility, if any. Defendant's wrongful conduct is  substantially injurious to consumers, offends legislatively declared public policy, and is immoral, unethical, oppressive, and unscrupulous.

133.    Plaintiff and Subclass Members continue to suffer harm, as Plaintiff's and Subclass Members' PII remains in Defendant's possession, without adequate protection, and remains in the hands of those who obtained it without their consent.

134.    Defendant's actions and omissions violated Section 5(a) of the Federal Trade Commission Act. See 15 U.S.C. § 45(n) (defining "unfair acts or practices" as those that "cause[] or [are] likely to cause substantial injury to consumers which [are] not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition"); see also, e.g., In re

LabMD, Inc., FTC Docket No. 9357, FTC File No. 102-3099 (July 28, 2016) (failure to employ reasonable and appropriate measures to secure personal information collected violated § 5(a) of FTC Act).

135.   Plaintiff and Class Members suffered injury in fact and lost money or property as a result of Defendant's violations of the UCL. Plaintiff and the California Class suffered from entering into transactions with Defendant that should have included adequate data security for their PII, by experiencing a diminution of value in their Private Information as a result if its theft by cybercriminals, the loss of Plaintiff's and Class Members' legally protected interest in the confidentiality and privacy of their PII, the right to control that information, and additional losses as described above.

136.   As a result of Defendant's unlawful and unfair business practices in violation of the UCL, Plaintiff and Class Members are entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

## COUNT VI
## VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")
### Cal. Civ. Code § 1798.100, et seq.
### (On Behalf of Plaintiff and California Subclass Members)

137.   Plaintiff incorporates by reference and re-allege each and every allegation set forth above in paragraphs 1 through 19 and paragraphs 24 through 55 as though fully set forth herein.

138.   Plaintiff brings this claim individually and on behalf of the members of the California Subclass.

139.   Defendant violated Section 1798.150(a) of the CCPA through its failure to implement and maintain reasonable data security procedures and practices appropriate to the nature of the information provided to it by Plaintiff and Subclass Members. This includes Defendant's failure to adequately safeguard customer PII

provided to its third-party agents and vendors. As a direct and proximate result, Plaintiff and Subclass Members' PII was subjected to unauthorized access and exfiltration, theft, or disclosure.

140. Defendant is a business entity organized for the profit and/or financial benefit of its owners and, upon information and belief, buys, receives, sells, and/or shares, for commercial purposes, the PII of individuals through, inter alia, its mortgage services.

141. As a direct and proximate result of Defendant's actions and omissions alleged herein, Plaintiff and Class Members were injured and lost money, property, and/or the interest in the confidentiality and privacy of their PII, as well as additional losses as described above.

142. Plaintiff and Subclass Members have suffered actual injury and seek relief under §1798.150(a), including but not limited to, statutory damages no less than $100 and up to $750 per customer record subject to the data breach, recovery of actual damages; injunctive or declaratory relief requiring Defendant implement reasonable security policies and procedures to protect their PII that remains in its possession; any other relief the court deems proper; and attorneys' fees and costs.

143. Under Section 1798.150(b), Plaintiff has sent a notice letter outlining Defendant's specific violations of the CCPA to Defendant's registered agent for service of process contemporaneously with the filing of this Complaint. Plaintiff will seek to amend the Complaint to seek relief once the requisite 30-day notice period has expired to state that Plaintiff provided Defendant proper notice of this claim.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)    For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representatives of the Class and his counsel as Class Counsel;

(b)    For an order declaring the Defendant's conduct violates the laws referenced herein;

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    For damages in amounts to be determined by the Court and/or jury;

(e)    An award of statutory damages or penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    Such other and further relief as the Court deems necessary and appropriate.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demand a trial by jury of all issues so triable.

Dated: February 08, 2024                Respectfully submitted,

**LAW OFFICES OF TODD M. FRIEDMAN**

By: */s/ Adrian R. Bacon*
Adrian R. Bacon, Esq. (SBN 280332)
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Tel.: (323) 306-4234
Facsimile: (866) 633-0228
Email: abacon@toddflaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark S. Reich*
Courtney E. Maccarone*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: cmaccarone@zlk.com

*Counsel for Plaintiff*

*\*pro hac vice* forthcoming